

## VERIFICATION OF PUBLICATION

**COMMONWEALTH OF VIRGINIA**
**COUNTY OF FAIRFAX**

Being duly sworn, Toussaint Hutchinson says that he is the principal clerk of USA TODAY, and is duly authorized by USA TODAY to make this affidavit, and is fully acquainted with the facts stated herein: on **Friday, January 3, 2014** the following legal advertisement – **Linda Klewinowski, on behalf of herself and all others similarly situated v. MFP, Inc. d/b/a Financial Credit Services** - was published in the regional edition of USA TODAY in the print markets of North Central Florida and South Florida.

*[signature]*
Principal Clerk of USA TODAY
January 10, 2014

This 10th day of January month 2014 year.

*[signature]*
Notary Public

```
JULIE ROTH
NOTARY PUBLIC
REG. #7573317
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES DECEMBER 31, 2017
```

# Need a college major? Try drones

## Courses offer entree to field

**Sydney Kashiwagi**
USA TODAY

In March, 47-year-old Stephen Myers ditched the information technology company that he built from the ground up and went back to school.

His choice of study? Drone technology. He's now earning a specialized degree from the Unmanned Vehicle University in Arizona. Myers is taking an online course on how to control a drone's sensors and electronics, and he hopes to build a new commercial drone business.

"I think that something a lot of people don't understand is that when people think of UAVs (unmanned aerial vehicles), they think of drones spying on them," said Myers, who lives in Naples, Fla. "What they don't realize, or what they don't understand, are all the other applications."

Drones are already being tested by companies such as Amazon, which hope to use them to deliver packages, and Domino's in the United Kingdom even wants them to deliver pizza. "There is almost no industry that you can think of that can't benefit from UAVs," said Myers.

The Federal Aviation Administration just named six teams across the nation that will host the development and testing of drones to fly safely in the same skies as commercial airliners.

The announcement represents a major milestone toward the goal of sharing the skies by the end of 2015, in what is projected to become an industry worth billions of dollars. But technical hurdles and privacy concerns remain in a regulatory program that's already a year behind schedule.

### COURSES VIA WEBINAR

Myers launched his previous IT career two decades ago during a time when computers were revolutionizing the world. Now, he's getting ready for a new digital revolution.

When Myers turns on his computer every Saturday afternoon he tunes into an online webinar course taught by a former Air Force technical director, and embarks on a simulated real world drone mission.

During his mission he applies math and physics to understand how to capture images on the ground while controlling the vehicle's center of gravity, signal-to-noise ratio and



Baptiste Tripard, the North American distributor of Swiss commercial drone company SenseFly, shows off the company's aerial photography mapping drone.
SYDNEY KASHIWAGI, USA TODAY



A NASA Global Hawk robotic jet in a hangar at Dryden Flight Research Center in Edwards Air Force Base, Calif.
JOHN ANTCZAK, AP

what to do if an engine fails.

"It is very technical, but very technical in a sense that it is applied math and physics that you take to apply to real world missions," said Myers.

But the new field of study brings a new field of controversy. Digital watchdog groups such as the Electronic Privacy Information Center warn that because the Federal Aviation Administration has still not outlined any specific privacy standards, the drone industry could lead to "Big Brother" in the sky.

"For every drone in the air, we're adding at least one more camera," said Amie Stepanovich, director of EPIC's Domestic Surveillance Project. "It's going to be a continuing issue, because the industry is growing."

In March, Stepanovich testified in front of the U.S. Senate Judiciary Committee to guide them on what she thinks are necessary privacy considerations that the FAA should include in their final plan in 2015. She says that the FAA needs to make databases that keep track of all unmanned vehicle pilots, and have restrictions on how drones can retain and share information, before the federal agency finalizes its policy.

By 2015, thousands of drones are expected to be flying above America. Teal Group, a defense forecasting company, predicts that drones will become a billion-dollar industry.

### GETTING A DRONE DEGREE

So, in order to keep up with this growing industry, universities around the country are starting drone degree programs. The University of North Dakota, Kansas State University Salina and Embry-Riddle Aeronautical University are just a few among the growing list that offer drone degree programs.

Dr. Jerry LeMieux, a former military fighter pilot and Delta Air Lines pilot, is the founder of the Unmanned Vehicle University in Phoenix. Students can get certified to pilot a drone, learn to become a professional aerial photographer, or get a master's or Ph.D. in UAV systems engineering.

"Thousands and thousands of small UAVs are going to be in the sky, because everyone wants to do this as a business or even help their existing business," said LeMieux. "They may want to use these vehicles as tools to help their business, or they may want to start their own business to provide a service."

LeMieux's university is taught completely online, and it has graduated about 500 students from around the world who have gone on to use drones to take pictures of endangered rhinoceroses in Africa, to conduct search-and-rescue missions during wildfire disasters and even to survey farmland from the sky.

LeMieux's students are paving the way for an industry that will create 70,000 new U.S. jobs, according to

> **"Thousands and thousands of small UAVs are going to be in the sky."**
> **Jerry LeMieux,** founder of the Unmanned Vehicle University in Phoenix

the Association for Unmanned Vehicle Systems International. The nonprofit research group predicts those jobs will come within the first three years, with 20,000 more by 2025.

Farmers, wildlife service members, photographers and filmmakers are among the professionals who LeMieux says have expressed interest in using drones to help their businesses.

### PRIVACY

But Stepanovich warns there are still issues that need to be addressed. "Where you're collecting information on individuals, that's where there's a risk. ... We're putting a lot of surveillance equipment in the air," she said.

Sen. Ed Markey, D-Mass., has asked the FAA to have better privacy protections in place before Amazon starts delivering packages via drones.

"Before drones start delivering packages, we need the FAA to deliver privacy protections for the American public. Convenience should never trump constitutional protections," Markey said in a statement.

---

Legal Notice

**IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LINDA KLEWINOWSKI, an individual, on behalf of herself and all others similarly situated,
    Plaintiff,
vs.    Case No. 8:13-CV-1204-T-33-TBM

MFP, INC. d/b/a FINANCIAL CREDIT SERVICES
    Defendant.
_____/

**NOTICE OF CLASS ACTION**

**TO:** ALL RESIDENTS OF FLORIDA WHO RECEIVED A COLLECTION LETTER BEARING THE WORDS "YOUR CREDITORS" FROM THE FINANCIAL CREDIT SERVICES OF CLEARWATER, FLORIDA BETWEEN MAY 9, 2012 AND MAY 15, 2013.

**NOTICE IS HEREBY GIVEN THAT,** pursuant to the Order of the United States District Court for the Middle District of Florida, (the "Court"), dated December 5, 2013, it was determined that the above-captioned lawsuit may be settled on behalf of a Class of Plaintiffs (the "Class") pursuant to Fed. R. Civ. P. 23 and defined as follows:

All residents of the State of Florida who received debt collection notices and/or letters from Financial Credit Services relating to a consumer medical debt containing the words "Your Creditors" from May 9, 2012 until May 15, 2013.

**Summary of the Litigation**
    Plaintiff Linda Klewinowski sued MFP, Inc. d/b/a Financial Credit Services located in Clearwater, Florida ("FCS"). She alleged FCS violated the Fair Debt Collection Practices Act (FDCPA). FCS sent collection letters to consumers in Florida that were required by law to identify the name of the creditor. The lawsuit alleges that the notice in FCS' collection letters was confusing and misleading, since the letters referenced only "Your Creditors" rather than specifically identify the actual name of the creditor(s).
    FCS denies that it has any liability to Klewinowski or the Class, but has agreed to settle this case based on the likely high cost of protracted litigation. The FDCPA provides for actual and statutory damages and payment of costs and reasonable attorneys' fees to a successful plaintiff. The lawsuit seeks only statutory damages. The maximum amount of statutory damages the class could recover in this class action under the FDCPA is $500,000.00 or 1% of Defendant's net worth, whichever is less. Because the Class is large, even if the Court were to award the maximum amount allowed by law, such amount would be a very small amount per class member.
    For a complete statement of all the contentions and proceedings in this case, you should consult the file relating to this lawsuit, which is available for your inspection at the office of the Clerk of the United States District Court for the Middle District of Florida, United States Courthouse, 801 N. Florida Avenue, Tampa, Florida 33602.

**Certification of the Class**
    1.1    The Class was certified, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), as a class action. The Court has appointed Plaintiff, LINDA KLEWINOWSKI as the representative of the Class, and her attorneys, Paul R. Fowkes, Esquire and Ryan C. Hasanbasic, Esquire of Disparti, Fowkes & Hasanbasic, P.A. located at 2203 North Lois Avenue, Suite 830, Tampa, Florida 33607 and Roger D. Mason, Esquire and Zachary A. Harrington, Esquire, of Roger D. Mason, II, P.A. located at 5135 West Cypress Street, Suite 102, Tampa, Florida 33607, as Counsel for the Class.

**Settlement of the Lawsuit**
    Under the terms of the proposed settlement, FCS has agreed to provide the following relief to Plaintiff and the Class:
    A.    FCS agrees to directly pay to the Bay Area Legal Services of Tampa as a cy pres distribution on behalf of the Class the total sum of $17,758.20.
    B.    FCS agrees to also pay Klewinowski the total amount of $1,000.00, as compensation for serving as Class Representative.
    C.    FCS has agreed to bear the costs of notice and class administration, and to pay the reasonable attorney's fees, expenses, and court costs, of Class Counsel as approved by the Court.
    D.    The Parties have already agreed that the total award for attorney's fees and costs shall not exceed $20,000.00.
    E.    FCS has already voluntarily modified the language in its collection notices which was at issue in this lawsuit.
    Upon final approval of the settlement, the Court will enter a judgment dismissing the lawsuit with prejudice and releasing FCS of all liability to Klewinowski and the Class for the Released Claims. Class Counsel believes that the proposed settlement is fair, reasonable, adequate, and in the best interests of the Class.

**Opt Out/Objections**
    a.    This is an opt-out class. You have either the right to object to the proposed settlement by filing and serve a written objection or you may opt out of being a member of the Class. Your objection must state your name, address, the case name and number, and the information described below. You or your attorney must sign your objection personally. You must mail your objection or your request to opt out, postmarked on or before March 10, 2014, to the following address:

Clerk of the United States District Court for the Middle District of Florida
United States Courthouse
801 North Florida Avenue
Tampa, FL 33602

You must also mail a copy of any opt-out or objection, postmarked on or before March 10, 2014 to Class Counsel and Counsel for FCS at the following addresses:

Paul R. Fowkes, Esquire
Ryan C. Hasanbasic, Esquire
Disparti, Fowkes & Hasanbasic, P.A.
2203 North Lois Avenue, Suite 830
Tampa, Florida 33607
CLASS COUNSEL

and:

ERNEST H. KOHLMYER, III, ESQUIRE
URBAN, THIER, FEDERER & CHINNERY, P.A.
200 SOUTH ORANGE AVENUE, SUITE 2000
ORLANDO, FLORIDA 32801
ATTORNEY FOR FCS

    No member of the Class, or any other person, will be heard at the Fairness Hearing in opposition to the Class Settlement, Class Counsel's proposed attorneys' fees and expenses, or the proposed payments to Class Representative unless not later than 5:00 p.m. on March 10, 2014, such Class Member or other person files with the Clerk of the Court and serves upon Class Counsel and FCS' Counsel the following: (i) a statement of each objection being made; (ii) a detailed description of the facts underlying each objection; (iii) a detailed description of the legal authorities underlying each objection; (iv) a statement of whether the objector intends to appear at the Fairness Hearing; (v) a list of witnesses whom the objector may call by live testimony, oral deposition testimony or affidavit during the Fairness Hearing, together with a summary of each witness' anticipated testimony; and (vi) a list of exhibits which the objector may offer during the Fairness Hearing, together with true copies of all of the exhibits.
    Class Members and any other persons who fail to file their notices to opt out and/or objections properly or timely with the Court Clerk, or fail to serve such notices and objections on Class Counsel and FCS' Counsel timely, will not be heard during the Fairness Hearing and the Court will not consider their objections. Any notice required by this paragraph shall be served on Class Counsel and FCS' Counsel by certified mail, hand-delivery, or facsimile transmission. No objection shall be heard by the Court which: (a) does not comply with these requirements; (b) is not timely filed with the Court; or (c) is not timely served on listed counsel.
    Until the Fairness Hearing described above, or further order of the Court, all Class Members are hereby preliminarily enjoined and ordered not to file, institute or prosecute any lawsuit or claim against FCS or any of its officers, directors, shareholders, or employees arising out of or related to the same or similar circumstances, transactions or occurrences as are alleged in this case, such as FCS' use of said written collection communications or letters.
    NOTICE IS HEREBY GIVEN THAT a hearing will be held before the Honorable Virginia M. Hernandez Covington, United States District Judge for the Middle District of Florida, on April 10, 2014, at 2:00 p.m., at the United States Courthouse, 801 North Florida Avenue, Tampa, FL 33602. This hearing will be held to determine if the proposed settlement is fair, reasonable, and adequate and should be approved and the lawsuit dismissed with prejudice. If the proposed settlement is approved, it will be binding and will release FCS from any and all claims that were asserted or could have been asserted by any of the Class Members.
    Questions concerning this class action litigation should be directed to Class Counsel at the addresses above.

**PLEASE DO NOT CALL THE JUDGE OR THE COURT CLERK.**

ENTER:

_____
HON. VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

# Need a college major? Try drones

## Courses offer entree to field

**Sydney Kashiwagi**
USA TODAY



In March, 47-year-old Stephen Myers ditched the information technology company that he built from the ground up and went back to school.

His choice of study? Drone technology. He's now earning a specialized degree from the Unmanned Vehicle University in Arizona. Myers is taking an online course on how to control a drone's sensors and electronics, and he hopes to build a new commercial drone business.

"I think that something a lot of people don't understand is that when people think of UAVs (unmanned aerial vehicles), they think of drones spying on them," said Myers, who lives in Naples, Fla. "What they don't realize, or what they don't understand, are all the other applications."

Drones are already being tested by companies such as Amazon, which hope to use them to deliver packages, and Domino's in the United Kingdom even wants them to deliver pizza. "There is almost no industry that you can think of that can't benefit from UAVs," said Myers.

The Federal Aviation Administration just named six teams across the nation that will host the development and testing of drones to fly safely in the same skies as commercial airliners.

The announcement represents a major milestone toward the goal of sharing the skies by the end of 2015, in what is projected to become an industry worth billions of dollars. But technical hurdles and privacy concerns remain in a regulatory program that's already a year behind schedule.

### COURSES VIA WEBINAR

Myers launched his previous IT career two decades ago during a time when computers were revolutionizing the world. Now, he's getting ready for a new digital revolution.

When Myers turns on his computer every Saturday afternoon he tunes into an online webinar course taught by a former Air Force technical director, and embarks on a simulated real world drone mission.

During his mission he applies math and physics to understand how to capture images on the ground while controlling the vehicle's center of gravity, signal-to-noise ratio and

SYDNEY KASHIWAGI, USA TODAY

Baptiste Tripard, the North American distributor of Swiss commercial drone company SenseFly, shows off the company's aerial photography mapping drone.



JOHN ANTCZAK, AP

A NASA Global Hawk robotic jet in a hangar at Dryden Flight Research Center in Edwards Air Force Base, Calif.

what to do if an engine fails.

"It is very technical, but very technical in a sense that it is applied math and physics that you take to apply to real world missions," said Myers.

But the new field of study brings a new field of controversy. Digital watchdog groups such as the Electronic Privacy Information Center warn that because the Federal Aviation Administration has still not outlined any specific privacy standards, the drone industry could lead to "Big Brother" in the sky.

"For every drone in the air, we're adding at least one more camera," said Amie Stepanovich, director of EPIC's Domestic Surveillance Project. "It's going to be a continuing issue, because the industry is growing."

In March, Stepanovich testified in front of the U.S. Senate Judiciary Committee to guide them on what she thinks are necessary privacy considerations that the FAA should include in their final plan in 2015. She says that the FAA needs to make databases that keep track of all unmanned vehicle pilots, and have restrictions on how drones can retain and share information, before the federal agency finalizes its policy.

By 2015, thousands of drones are expected to be flying above America. Teal Group, a defense forecasting company, predicts that drones will become a billion-dollar industry.

### GETTING A DRONE DEGREE

So, in order to keep up with this growing industry, universities around the country are starting drone degree programs. The University of North Dakota, Kansas State University Salina and Embry-Riddle Aeronautical University are just a few among the growing list that offer drone degree programs.

Dr. Jerry LeMieux, a former military fighter pilot and Delta Air Lines pilot, is the founder of the Unmanned Vehicle University in Phoenix. Students can get certified to pilot a drone, learn to become a professional aerial photographer, or get a master's or Ph.D. in UAV systems engineering.

"Thousands and thousands of small UAVs are going to be in the sky, because everyone wants to do this as a business or even help their existing business," said LeMieux. "They may want to use these vehicles as tools to help their business, or they may want to start their own business to provide a service."

LeMieux's university is taught completely online, and it has graduated about 500 students from around the world who have gone on to use drones to take pictures of endangered rhinoceroses in Africa, to conduct search-and-rescue missions during wildfire disasters and even to survey farmland from the sky.

LeMieux's students are paving the way for an industry that will create 70,000 new U.S. jobs, according to

> "Thousands and thousands of small UAVs are going to be in the sky."
> **Jerry LeMieux,** founder of the Unmanned Vehicle University in Phoenix

the Association for Unmanned Vehicle Systems International. The nonprofit research group predicts those jobs will come within the first three years, with 20,000 more by 2025.

Farmers, wildlife service members, photographers and filmmakers are among the professionals who LeMieux says have expressed interest in using drones to help their businesses.

### PRIVACY

But Stepanovich warns there are still issues that need to be addressed. "Where you're collecting information on individuals, that's where there's a risk. ... We're putting a lot of surveillance equipment in the air," she said.

Sen. Ed Markey, D-Mass., has asked the FAA to have better privacy protections in place before Amazon starts delivering packages via drones.

"Before drones start delivering packages, we need the FAA to deliver privacy protections for the American public. Convenience should never trump constitutional protections," Markey said in a statement.

---

Legal Notice | Legal Notice | Legal Notice

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDA KLEWINOWSKI, an individual, on behalf of herself and all others similarly situated,
    Plaintiff,
vs.                                Case No. 8:13-CV-1204-T-33-TBM
MFP, INC. d/b/a FINANCIAL CREDIT SERVICES
    Defendant.
_____/

**NOTICE OF CLASS ACTION**

**TO:** ALL RESIDENTS OF FLORIDA WHO RECEIVED A COLLECTION LETTER BEARING THE WORDS "YOUR CREDITORS" FROM THE FINANCIAL CREDIT SERVICES OF CLEARWATER, FLORIDA BETWEEN MAY 9, 2012 AND MAY 15, 2013.

**NOTICE IS HEREBY GIVEN THAT,** pursuant to the Order of the United States District Court for the Middle District of Florida, (the "Court"), dated December 5, 2013, it was determined that the above-captioned lawsuit may be settled on behalf of a Class of Plaintiffs (the "Class") pursuant to Fed. R. Civ. P. 23 and defined as follows:

All residents of the State of Florida who received debt collection notices and/or letters from Financial Credit Services relating to a consumer medical debt containing the words "Your Creditors" from May 9, 2012 until May 15, 2013.

**Summary of the Litigation**
    Plaintiff Linda Klewinowski sued MFP, Inc. d/b/a Financial Credit Services located in Clearwater, Florida ("FCS"). She alleged FCS violated the Fair Debt Collection Practices Act (FDCPA). FCS sent collection letters to consumers in Florida that were required by law to identify the name of the creditor. The lawsuit alleges that the notice in FCS' collection letters was confusing and misleading, since the letters referenced only "Your Creditors" rather than specifically identify the actual name of the creditor(s).
    FCS denies that it has any liability to Klewinowski or the Class, but has agreed to settle this case based on the likely high cost of protracted litigation. The FDCPA provides for actual and statutory damages and payment of costs and reasonable attorneys' fees to a successful plaintiff. The lawsuit seeks only statutory damages. The maximum amount of statutory damages the class could recover in this class action under the FDCPA is $500,000.00 or 1% of Defendant's net worth, whichever is less. Because the Class is large, even if the Court were to award the maximum amount allowed by law, such amount would be a very small amount per class member.
    For a complete statement of all the contentions and proceedings in this case, you should consult the file relating to this lawsuit, which is available for your inspection at the office of the Clerk of the United States District Court for the Middle District of Florida, United States Courthouse, 801 N. Florida Avenue, Tampa, Florida 33602.

**Certification of the Class**
    1.1    The Class was certified, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), as a class action. The Court has appointed Plaintiff, LINDA KLEWINOWSKI as the representative of the Class, and her attorneys, Paul R. Fowkes, Esquire and Ryan C. Hasanbasic, Esquire of Disparti, Fowkes & Hasanbasic, P.A. located at 2203 North Lois Avenue, Suite 830, Tampa, Florida 33607 and Roger D. Mason, Esquire and Zachary A. Harrington, Esquire, of Roger D. Mason, II, P.A. located at 5135 West Cypress Street, Suite 102, Tampa, Florida 33607, as Counsel for the Class.

**Settlement of the Lawsuit**
    Under the terms of the proposed settlement, FCS has agreed to provide the following relief to Plaintiff and the Class:
    A.    FCS agrees to directly pay to the Bay Area Legal Services of Tampa as a cy pres distribution on behalf of the Class the total sum of $17,758.20.
    B.    FCS agrees to also pay Klewinowski the total amount of $1,000.00, as compensation for serving as Class Representative.
    C.    FCS has agreed to bear the costs of notice and class administration, and to pay the reasonable attorney's fees, expenses, and court costs, of Class Counsel as approved by the Court.
    D.    The Parties have already agreed that the total award for attorney's fees and costs shall not exceed $20,000.00.
    E.    FCS has already voluntarily modified the language in its collection notices which was at issue in this lawsuit.
    Upon final approval of the settlement, the Court will enter a judgment dismissing the lawsuit with prejudice and releasing FCS of all liability to Klewinowski and the Class for the Released Claims. Class Counsel believes that the proposed settlement is fair, reasonable, adequate, and in the best interests of the Class.

**Opt Out/Objections**
    a.    This is an opt-out class. You have either the right to object to the proposed settlement by filing and serve a written objection or you may opt out of being a member of the Class. Your objection must state your name, address, the case name and number, and the information described below. You or your attorney must sign your objection personally. You must mail your objection or your request to opt out, postmarked on or before March 10, 2014, to the following address:

    Clerk of the United States District Court for the Middle District of Florida
    United States Courthouse
    801 North Florida Avenue
    Tampa, FL 33602

    You must also mail a copy of any opt-out or objection, postmarked on or before March 10, 2014 to Class Counsel and Counsel for FCS at the following addresses:

    Paul R. Fowkes, Esquire
    Ryan C. Hasanbasic, Esquire
    Disparti, Fowkes & Hasanbasic, P.A.
    2203 North Lois Avenue, Suite 830
    Tampa, Florida 33607
    CLASS COUNSEL

    and:

    ERNEST H. KOHLMYER, III, ESQUIRE
    URBAN, THIER, FEDERER & CHINNERY, P.A.
    200 SOUTH ORANGE AVENUE, SUITE 2000
    ORLANDO, FLORIDA 32801
    ATTORNEY FOR FCS

    No member of the Class, or any other person, will be heard at the Fairness Hearing in opposition to the Class Settlement, Class Counsel's proposed attorneys' fees and expenses, or the proposed payments to Class Representative unless not later than 5:00 p.m. on March 10, 2014, such Class Member or other person files with the Clerk of the Court and serves upon Class Counsel and FCS' Counsel the following: (i) a statement of each objection being made; (ii) a detailed description of the facts underlying each objection; (iii) a detailed description of the legal authorities underlying each objection; (iv) a statement of whether the objector intends to appear at the Fairness Hearing; (v) a list of witnesses whom the objector may call by live testimony, oral deposition testimony or affidavit during the Fairness Hearing, together with a summary of each witness' anticipated testimony; and (vi) a list of exhibits which the objector may offer during the Fairness Hearing, together with true copies of all of the exhibits.
    Class Members and any other persons who fail to file their notices to opt out and/or objections properly or timely with the Court Clerk, or fail to serve such notices and objections on Class Counsel and FCS' Counsel timely, will not be heard during the Fairness Hearing and the Court will not consider their objections. Any notice required by this paragraph shall be served on Class Counsel and FCS' Counsel by certified mail, hand-delivery, or facsimile transmission. No objection shall be heard by the Court which: (a) does not comply with these requirements; (b) is not timely filed with the Court; or (c) is not timely served on listed counsel.
    Until the Fairness Hearing described above, or further order of the Court, all Class Members are hereby preliminarily enjoined and ordered not to file, institute or prosecute any lawsuit or claim against FCS or any of its officers, directors, shareholders, or employees arising out of or related to the same or similar circumstances, transactions or occurrences as are alleged in this case, such as FCS' use of said written collection communications or letters.
    NOTICE IS HEREBY GIVEN THAT a hearing will be held before the Honorable Virginia M. Hernandez Covington, United States District Judge for the Middle District of Florida, on April 10, 2014, at 2:00 p.m., at the United States Courthouse, 801 North Florida Avenue, Tampa, FL 33602. This hearing will be held to determine if the proposed settlement is fair, reasonable, and adequate and should be approved and the lawsuit dismissed with prejudice. If the proposed settlement is approved, it will be binding and will release FCS from any and all claims that were asserted or could have been asserted by any of the Class Members.
    Questions concerning this class action litigation should be directed to Class Counsel at the addresses above.

**PLEASE DO NOT CALL THE JUDGE OR THE COURT CLERK.**

    ENTER:

                            _____
                            HON. VIRGINIA M. HERNANDEZ COVINGTON
                            UNITED STATES DISTRICT JUDGE