UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDA KLEWINOWSKI, an
individual and on behalf of those
similarly situated,

                                          Case No.: 8:13-cv-1204-33-TBM

      Plaintiffs,

v.

MFP, INC., d/b/a FINANCIAL
CREDIT SERVICES,

      Defendant.
_____/

**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AGREEMENT AND APPROVAL OF STIPULATED
AWARD OF ATTORNEY'S FEES AND COSTS**

Plaintiff, Linda Klewinowski (the "Class Representative"), on behalf of h e r s e l f and

all others similarly situated pursuant to Rule 23, Federal Rules of Civil Procedure, by and

through her undersigned attorneys ("Class Counsel") and Defendant, MFP, Inc. d/b/a Financial

Credit Services, ("FCS"), by and through its counsel, hereby respectfully move this Honorable

Court for an order granting final approval of the Class Action Settlement Agreement in this

matter, and in support would show as follows:

      1.     This action was brought by Plaintiff, Linda Klewinowski on behalf of herself and

all others similarly situated against Defendant, MFP, Inc. d/b/a Financial Credit Services, a

Florida corporation" ("FCS"), for an alleged violation of 15 U.S.C.§1692 *et sequi*, known more

commonly as the "Fair Debt Collection Practices Act" ("FDCPA"). In particular, the Plaintiff

has alleged that in the course of collecting a debt, FCS sent a dunning letter which contained the

words "YOUR CREDITORS" rather than specifically identifying the creditor(s) by name.

2.     After extensive settlement discussions, the parties finalized a Class Action Settlement Agreement ("Settlement Agreement"), a copy of which has been previously filed with the Court.

3.     On December 5, 2013, this Court entered a Preliminarily Approval Order of the Class Action Settlement ("Preliminary Approval Order").  **[DE 28]**

## MEMORANDUM OF LAW

### I.     INTRODUCTION

#### A.     *Procedural History*

The Complaint of the Class Representative alleges that FCS used a collection letter that violated the operative provisions of the FDCPA. In particular, according to the allegations of the Complaint, FCS sent a dunning letter which contained the words "YOUR CREDITORS" rather than specifically identifying the name of the creditor.  FCS contends that its collection letter was not misleading or confusing and denies liability under the FDCPA.

Class Counsel conducted an investigation as to the factual and legal merits of the action. The Parties have fully researched the legal issues raised by this case prior to settlement and despite disagreement as to whether the letter's content violates the FDCPA, the Parties continued to engage in settlement negotiations over the course of several weeks.  In conjunction with these negotiations, the Parties exchanged information and documents relevant to the discussions. Included in this discovery was information relating to the potential class size as defined in the Complaint and the net worth calculation for FCS. Through this process, the Class Representative, by and through her Class Counsel, acquired sufficient knowledge and information to adequately assess the merits of the settlement. After reaching a settlement in principle, the Parties negotiated the detailed final terms of the proposed Settlement Agreement now before the Court.

### B. Terms of Settlement

Pursuant to the Settlement Agreement, the Parties have stipulated for settlement purposes as follows:

Settlement Class. The Settlement Class consists of:

**ALL RESIDENTS OF FLORIDA WHO RECEIVED A COLLECTION LETTER BEARING THE WORDS "YOUR CREDITORS" FROM THE FINANCIAL CREDIT SERVICES OF CLEARWATER, FLORIDA BETWEEN MAY 9, 2012 AND MAY 15, 2013.**

A.   Payment to Class Members. FCS agrees to directly pay to the Bay Area Legal Services of Tampa as a *cy pres* distribution on behalf of the Class the total sum of **$17,758.20.**

B.   Payment to Class Representative In addition to the *cy pres* payment, FCS agrees to compensate the Class Representative One Thousand Dollars ($1,000.00) for her services as Class Representative.

C.   Equitable Relief.  FCS has agreed to amend the collection letter and has since altered its collection notice as of May 15, 2013.

D.   Costs of Settlement Administration.  FCS has paid for the costs of the Settlement Administration, including but not limited to, the cost and expense of publication of the Class Notice and legal services to manage the Settlement Agreement terms and conditions.

E .   Attorneys' Fees, Costs and Expense. Pursuant to the Settlement Agreement, the Parties agreed that the reasonable attorneys' fees, costs and expense for Class Counsel shall be paid by FCS as approved by the Court.  As a basis for the Class Notice, the Parties agreed to cap the requested attorney's fees and costs to $20,000.00. Since the Preliminary Approval Order, the Parties have since agreed and have stipulated herein to the payment of $16,000.00 inclusive of all costs and fees to Class Counsel in this case.

### C.  Details of Settlement Administration

Pursuant to the Preliminary Approval Order,  the Court approved the form of the Notice to Settlement Class and further directed the Defendant to publish the Class Notice in the USA Today newspaper for the regional locations within the State of Florida.  On January 3, 2014, the Class Notice was published as instructed and proof of publication with a copy of the proof was provided to the Court with certification of compliance of Defendant's counsel.

As of March 10, 2014, the deadline imposed by the Court for opt-outs and objections:

- No objections were received as of March 10, 2014 to Defendant's counsel or Class Counsel.

- No requests for exclusion were received as of March 10, 2014 to Defendant's counsel or Class Counsel.

## II.     STANDARD OF REVIEW OF CLASS ACTION SETTLEMENTS

Courts consistently favor settlement of disputed claims. *See, Williams v. First National Bank*, 216 U.S. 582 (1910); *Weinberg v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982); *DuPuy v. Director, Officer of Worker's Compensation Programs*, 519 F.2d 536,541 (7th Cir.1975), *cert. denied*, 424 U.S.965 (1976). Nowhere is this policy more appropriate than in class actions:

> In the class action context in particular, "there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977). Settlement of the complex disputes often involved in class actions minimizes the litigation expense  of both parties and also reduces the strain such litigation imposes upon already scarce  judicial resources. *Id.*

See *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir.1980); *see also, Franks v. Kroger*, 649 F.2d 1216, 1224 (6th Cir.1981) *vacated on other grounds and modified*, 670 F.2d 71 (6th Cir.1982) (law generally favors and encourages the settlement of class actions); *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 307 (7th Cir.1985) *on reh'g, en banc, Secy of Labor v. Fitzsimmons,*

805 F.2d 682 (7th Cir.1986); *Patterson v. Stovall*, 528 F.2d 108, 112 (7th Cir.1976); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 246 (S.D. Ohio 1990); *In re Dun & Bradstreet Credit Service Consumer Litigation,* 130 F.R.D. 366, 371 (S.D. Ohio1990); *In re Domestic Air Transportation Antitrust Litigation,* 148 F.R.D.297, 312 (N.D.Ga.1993) ("settlements of class actions are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits").

In reviewing a proposed settlement, courts should neither substitute their own judgment for that of the parties who negotiated the settlement, nor "reopen and enter into negotiations with the litigants in the hopes of improving the terms of the settlement." *See In re Saxon Securities Litigation,* [1985-86 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶92,414 at 92,525 (quoting *Argo v. Harris,* 84 F.R.D.646, 647-48 (E.D.N.Y.1979)); *see also Enterprise Energy, supra,* 137 F.R.D. at 246 (settlement must be viewed in its entirety and court may not modify individual terms which were the product of negotiations).

As stated by the court in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir.1974):

It is not necessary in order to determine whether an agreement of settlement and

> compromise shall be approved that the court try the case which is before it for settlement … Such procedure would emasculate the very purpose for which settlements are made. The court is only called upon to consider and weigh the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable.

In lieu of a more extended inquiry into the claims asserted, courts have concentrated on the "negotiating process by which the settlement was reached." *Weinberger v. Kendrick,* 698 F.2d 61, 74 (2d Cir. 1982). Courts have thus focused on whether the settlement was achieved through "arm's length negotiations" by counsel who have "the experience and ability … necessary to [provide]

effective representation of the Class's interests." *Id.; see also Stotts v. Memphis Fire Department,* 679 F.2d 541, 551 (6th Cir.1982); *Granada Investments, Inc. v. DWG Corp.,* 823 F.Supp. 448, 454 (N.D.Ohio1993) (citing importance of arm's length negotiations); *Spencer v. Comserv Corp.,* [1986-87 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶93,124 at 95,530 (D.Minn.1986); *In re Warner Communications Securities Litigation,* 618 F.Supp.735, 741 (S.D.N.Y. 1985), *aff'd,* 798 F.2d35 (2d Cir.1986).

In deciding whether to approve the proposed settlement, this Court must determine whether the proposal is fair, adequate and reasonable. *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984); *Gautreaux v. Pierce,* 690 F.2d 616, 631 (7th Cir.1982); *In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312. *See also Toledo Fair Housing Ctr. v. Nationwide Mut. Ins. Co.,* 94 Ohio Misc.2d 186, 188 (Lucas Co.1998); *Beder v. Cleveland Browns, Inc.,* 758 N.E.2d 307, 114 Ohio Misc.2d 26 (2001).

"[T]here is a strong initial presumption that the compromise is fair and reasonable." *In re Saxon Securities Litigation, supra*, ¶92,414 (quoting *Katz v. E.L.I. Computer Systems, Inc.*, [1970-71 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶92,994 at 90,676 (S.D.N.Y. 1971)). Accordingly, courts exercise restraint in examining a proposed settlement and recognize that "[s]ettlements, by definition, are compromises which need not satisfy every single concern of the plaintiff class, but may fall anywhere within a broad range of upper and lower limits." *In re Saxon Securities Litigation, supra*, ¶92,414 at 92,525 (quoting *Alliance to End Repression v. City of Chicago,* 561 F.Supp. 537, 548 (N.D.Ill.1982)).

An assessment of the fairness, reasonableness and adequacy of a proposed settlement herein requires the court to weigh numerous factors. In this regard, it has been noted:

6

> It is well established that the court assumes a limited role when requested to approve a class action settlement proposal. While the interests of the class members must be carefully protected … the Court must avoid deciding or trying to decide the likely outcome of a trial on the merits. Approval or disapproval is dependent upon whether, under all of the particular circumstances, the terms reached are fair, reasonable and adequate.

*See In re National Student Marketing Litigation,* 68 F.R.D. 151, 155 (D.D.C.1974) (citations omitted).

### III.    LEGAL ARGUMENT

**A.    Notice to the Settlement Class Has Satisfied the Requirements of Rule 23(c)(2)(B), Federal Rules of Civil Procedure and Constitutional Due Process Requirements.**

*1.    The Form and Content of the Class Notice Satisfied the Requirements of Rule 23(c)(2)(B)*

Pursuant to the Federal Rule of Civil Procedure 23(b)(3), the best notice practicable under the circumstances must be sent to apprise class members of the pendency of the suit and advising them of their right to opt-out under Rule 23(c). The rule further requires that the notice for a (b)(3) class concisely and clearly state in plain, easily understood language *inter alia* the nature of the action, the definition of the class certified, the right to exclude and object, and the binding effect of the class judgment. Fed.R.Civ.P. 23(c)(2)(B).

In the instant action, the Court approved the form and content of the Notice to the Class upon entry of the Preliminary Approval Order. The Notice informed the Class Members of the material terms of the settlement as well as the right of the Class Members to opt out, intervene or object to the Class Action Settlement. Accordingly, it is the position of Parties that the content and form of the Notice to the members of the Class satisfies the requirements of Rule 23(c)(2)(B).

2.      *The Best Notice Practicable Has Been Sent to the Members of the Class.*

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." When a potential class member's address is known or is readily available with reasonable effort, individual notice by mail is required. *Eisen v. Carlyle & Jacquelyn*, 417 U.S. 156, 173 (1974). Rule 23 does not require the parties to exhaust every conceivable method of identifying and providing notice to the individual class members. *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir.1985).

In this matter, the number of prospective Class Members was expectedly large and thus the Parties proposed notice by publication within the State of Florida.  The Parties assert that the use of notice by publication was fair and the best practicable method of notice under the circumstances of the case since the USA Today is a general circulation newspaper and the most effective for notice to the consumer public at large.

Accordingly, in light of the modest settlement benefits, "the best notice practicable" has been made by Defendant. This position is especially compelling as certain of the dunning letters which are the subject matter of this litigation may not have been received by Members of the Class in the first place. *In Re: Prudential Insurance Co. of America Sales Practices Litigation*, 177 F.R.D. 216, 239 (D. N.J. 1997)["that some class members may not have received notice evidences only that the extensive notice system was not perfect.  Due process when viewed through the lens of objectivity does not require perfection"]; *Grunin v. International House of Pancakes,* 513 F.2d 114 (8th Cir. 1975)[in antitrust class action, notice adequate where one third of class not reached by mail].

## B.  The Proposed Settlement is Fair, Adequate and Reasonable

1.      *Federal Law Supports Approval of Class Action Settlement Agreements That Are Fair, Adequate and Reasonable.*

Judicial approval of class action settlements requires a two-step process.  In the first step, the

court makes a preliminary determination as to whether the settlement falls "within the range of possible judicial approval." *H. Newberg, Newberg on Class Actions* (3d Ed. 1993) §11.25, p.11-37. Once the settlement is found to be within the range of possible approval, a final approval hearing is scheduled and notice is provided to the class. *Id.* The second step involves final determination, following a hearing at which pertinent evidence and any objections by class members may be considered, that the settlement is fair, reasonable and adequate from the standpoint of the class. *Id.* at §11.41.

In *Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989), the District Court described review of class action settlements as follows:

> The Court initially recognizes the principal that settlements are highly favored in the law. Miller v. Republic National Life Insurance Company, 559 F.2d 426 (5th Cir. 1977). The Court is required to make a two-part determination that: 1) there is no fraud or collusion in reaching settlement, and 2) the settlement is fair, adequate and reasonable. Bennett v. Behring Corp., 737 F.2d 982 (11th Cir. 1984).

*Id.* at 1054

The evaluation of whether a settlement is fair, reasonable and adequate is committed to the sound discretion of the trial court. *Bennett*, 737 F. 2d at 987. In making this determination, the trial court is entitled to rely upon the judgment of experienced counsel for the parties. *Behrens v. Wometco*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

In lieu of a more extended inquiry into the claims asserted, courts have concentrated on the negotiating process by which the settlement was reached. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982), *corrected on other grounds on pet. for reh'g*, [1982-1983 Transfer Binder] Fed. Sec. L. Rep. (CCH) 99,074 (2d Cir.) *cert. denied* 464 U.S. 818 (1983). The courts insist that a settlement be the result of "arm's length negotiations" effected by counsel possessed of

"experience and ability... necessary to effective representation of the class' interests." *Id*. 698 F.2d at 74 (citation omitted). Once counsel's experience is established, courts give such counsel's "opinion... supporting the settlement . . . 'considerable weight' ". *In re: Saxon Securities Litigation, supra*, [1985-1986 Transfer Binder] Fed. Sec. L. Rep. (CCH) 92,414, at 92,525 (S.D.N.Y. 1985). This is because "the parties' counsel are best able to weigh the relative strengths and weaknesses of their arguments." *Id*.

In determining whether a proposed settlement is fair, adequate and reasonable, this Court should consider the following seven factors:

(1)    the likelihood of success or recovery;

(2)    the range of possible recovery;

(3)    the settlement terms and conditions, and how the terms compare with the possible range of discovery;

(4)    the complexity, expense and duration of future litigation;

(5)    the substance and amount of any opposition to the settlement;

(6)    the stage of the proceedings at which settlement is reached;

(7)    the recommendations and judgment of experienced counsel and the absence of collusion.

*Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Andrews v. Ocean Reef Club, Inc.*, 1993 WL 563622, *3 (Fla. Cir. Ct. 1993). Application of these factors shows that the proposed settlement is fair, adequate, reasonable and in the best interest of the Settlement Class.

    2.    *Even With a Strong Factual and Legal Case, Class Members Face a Significant Risk in Establishing Liability and Damages.*

Although the Class Representative believes that the claims she has raised are meritorious, the Class Representative recognizes that ultimate success on the merits is by no means assured. During the initial part of this litigation, FCS made clear that if this matter were contested, it would vigorously challenge the merits of the claims of the Class Representative. FCS has also contended and continues to contend that it has meritorious defenses to the asserted claims.

    3.    *The Settlement Terms and Conditions Offer Substantial Benefit to All Settlement Members*

Benefit to the Settlement Class is the fundamental test of the reasonableness of a settlement. Here, the proposed settlement provides remedies directly responsive to the primary relief sought by the Class Representative. Under 15 U.S.C. §1692k(2)(B)(ii), the recovery of the Class is limited to the lessor of $500,000.00 or 1% of the net worth of the debt collector. Hence, the settlement benefits are extremely modest in comparison to the expected number of Class Members.

In the recent case of *Bellows v. NCO Financial Systems*, the United States District Court for the Southern District of California granted final approval of a nationwide FDCPA class action. Under the terms of the settlement agreement, the debt collector was required to establish a settlement fund of Nine Hundred Fifty Thousand Dollars ($950,000.00), from which Class Members had the right to make a claim to receive a $70.00 settlement check. <u>Id</u> at *7. After publishing the notice in USA Today, only 29 claim forms were submitted to the settlement administrator. <u>Id.</u> at 4. Notwithstanding the small number of claim forms submitted by class members, the Court nonetheless granted final approval holding that "where a much smaller number of claims were made in the class action than expected, '[i] in such circumstances, the settlement agreement should not

lightly be set aside nearly because subsequent developments have indicated that the bargain is more

beneficial to one side than to the other." Id.*8, quoting from *Beecher v. Abel*, 441 F.Supp. 426,

429 (S.D. N.Y. 1977).

    *4.    The Time and Expense of Protracted Litigation Makes Settlement Appropriate.*

Settlement promotes the interests of the litigants by saving them the expense of trial of

disputed issues and reduces the strain on already overburdened courts. *See, Armstrong, supra,* 616

F.2d at 313; *Newman v. Stein,* 464 F. 2d 689, 691-92 (2d Cir.*), cert. denied, sub nom.; Benson v.

Newman,* 409 U.S. 1039 (1972*); Enterprise Energy, supra,* 137 F.R.D. at 247-48 (class action

settlement serves interests of both litigants and public by avoiding a time-consuming trial and

appeal). This position is especially compelling in light of the potentially modest recovery per

class member based on the large class size.

    *5.    There is No Opposition to the Proposed Settlement.*

As noted above, the Settlement Class received notice of the proposed settlement by

publication. In response to this notice program, no objections have been raised and no Class

Members have opted-out. Based upon the unanimously favorable response to the proposed

settlement, there exists no reason to delay final approval.

    *6.    The Parties have Conducted Due Diligence Discovery and Have Negotiated the Settlement From a Well-Informed Perspective.*

In the several months since this class action was initiated, the parties have developed

substantial appreciation for the merits of their respective positions before reaching an agreement as

to settlement. The parties have conducted formal and informal discovery, including the exchange of

documentation relating to numerosity and the net worth of FCS.

The settlement discussions were successfully concluded with a written term sheet drawn up

by counsel. Once the general terms of the settlement were reached, the parties continued to negotiate the specific provisions and language of the agreement over the next several weeks.

> 7. *Class Counsel Believes That the Settlement is Fair, Reasonable and in the Best Interests of Settlement Class Members.*

The opinion of experienced class action counsel with substantial experience in litigation of similar size and scope is an important consideration. *See, In re Domestic Air Transportation Antitrust Litigation, supra,* 148 F.R.D. at 312; *Andrews v. Ocean Reef Club, Inc.*, 1993 WL 563622, *3 (Fla. Cir. Ct. 1993). In the instant action, Class Counsel has experience in litigating consumer class actions. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel. *See, Ressler v. Jacobson,* 822 F.Supp. 1551, 1553 (M.D. Fla. 1992). "While the opinion and recommendation of experience counsel is not blindly followed by the trial court, such opinion should be given great weight in evaluating the proposed settlement." *Flinn v. FMC Corp.,* 528 F.2d 1169, 1173 (4th Cir.1975). "Where experienced counsel have engaged in arm's length negotiations to reach a settlement, the trial court is entitled to rely on their judgment." *Spencer, supra,* ¶93,124 at 95,530; *see also Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)(court should defer to judgment of experienced counsel who has competently evaluated the strength of his proofs); *Enterprise Energy, supra,* 137 F.R.D. at 247 (endorsement of settlement by experienced counsel supported fairness, adequacy and reasonableness of settlement); *Ohio Public Interest Campaign v. Fisher Foods,* 546 F.Supp.1, 11 (N.D.Ohio1982) (opinion of counsel to be given great weight by the Court). Indeed, there is a "strong initial presumption" that an arm's length settlement arrived at by experienced counsel, and premised upon sufficient information to evaluate the claims at issue is fair. *See Feder v. Harrington,* 58 F.R.D. 171 (S.D.N.Y.1972).

Here, the settlement is the product of extensive, adversarial, arm's length negotiations conducted by counsel experienced in all aspects of class action litigation, and particularly experienced in the FDCPA context.[1] As discussed above, the proposed settlement offers the Settlement Class a substantial portion of the relief sought and which could be obtained at trial. Thus, in counsels' view, the proposed settlement is fair, reasonable and in the best interest of the Settlement Class.

By reaching the proposed settlement, the parties have dispensed with the need for further protracted litigation. Upon final approval, if given, the proposed settlement will have established a significantly faster and guaranteed favorable resolution of the claims against FCS.

8.      *The Parties Negotiated the Proposed Settlement in Good Faith.*

This lawsuit has been pending since May 7, 2013. The proposed settlement was negotiated at arm's length, after several weeks of negotiations, and additional, detailed settlement negotiations which were conducted before the final terms of the Settlement Agreement were reached. Thus, there is not even a hint of bad faith or collusion surrounding the proposed settlement to undermine its fairness or adequacy. *See, Cleveland Browns, supra,* 758 N.E.2d at 310.

9.      *The Parties have Stipulated to the Class Counsel's Attorney's Fees and Cost Award*

The Parties have reviewed the suggested hourly rates and time sheets for the work performed by Class Counsel and have agreed to $16,000.00 in this case. The Parties agree that this total sum is reasonable and fair given the Lodestar factors applicable in this case. FCS has agreed to pay said sum within 45 days following the entry of the Final Order and Judgment in this case so long as no appeal or other challenge is made to the terms and conditions of the

---

[1] Defendant's counsel has 22 years of experience in federal court litigation including the defense of over 1000 FDCPA cases in the State of Florida.

Settlement Agreement.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff, Linda Klewinowski, on behalf of herself and all others similarly situated, as well as MFP, Inc. d/b/a Financial Credit Services, respectfully request that this Court approve the settlement as fair, adequate and reasonable.

Dated this 26th day of March, 2014.

Respectfully submitted,

/s/ Ernest H. Kohlmyer, III
Ernest H. Kohlmyer, III

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on March 26, 2014, via the Court Clerk's CM/ECF system which will provide notice to the following: Ryan C. Hasanbasic,  Esquire at rhasanbasic@dfhlawfirm.com *(Attorneys for Plaintiff)* and Virginia Townes, Esquire of the law firm Akerman LLP at virginia.townes@akerman.com *(Co-Counsel for Defendant, MFP, Inc.)*.

/s/ Ernest H. Kohlmyer, III
Ernest H. Kohlmyer, III
Florida Bar No.: 110108
Kohlmyer@urbanthier.com
Urban, Thier, Federer & Chinnery, P.A.
200 S. Orange Avenue, Suite 2000
Orlando, FL  32801
Phone: (407) 245-8352
Fax: (407) 245-8361
*Attorneys for Defendant*